UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
BENJAMIN FARIAS,

                        Plaintiff,                           Index No.:

        -against-

THE CITY OF NEW YORK, OFFICER TONY BASILIO       **COMPLAINT**
(N.Y.P.D.) SHIELD #006027, SERGEANT ROBERT
KING (N.Y.P.D.) SHIELD #003180, OFFICER(S) JOHN   **JURY TRIAL**
DOE #1-10 (THE NAME JOHN DOE BEING               **DEMANDED**
FICTICIOUS, AS THE TRUE NAME(S) IS/ARE
PRESENTLY UNKNOWN),

                       Defendants.
--------------------------------------------------------------------X

     The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF ANDREW L.

HOFFMAN, P.C., respectfully shows this Court and alleges:

### INTRODUCTION

1.  This is a civil rights action to vindicate the rights of Plaintiff Benjamin Farias, a resident

   of the Bronx, who was pulled over without legal justification, forced to endure an

   unauthorized search of his vehicle, and finally tossed, handcuffed, into the back of a

   squad car with such force that he suffered a fractured wrist.

2.  As the encounter unfolded, in light of the baseless stop and the officers' bullying

   demeanor, Mr. Farias decided to activate the video[1] recorder on his phone, and set it in

   the cup holder between his front seats.

---

[1] See Bronx Man to Sue Over Unexplained Arrest that Allegedly Left Him with a Fractured Wrist, New York Daily News, June 8, 2015, available at http://www.nydailynews.com/new-york/bronx/bronx-man-sue-unexplained-arrest-alleged-injury-article-1.2250185.

3. The resulting footage captures the officers jokingly acknowledging that they have no idea why they stopped Mr. Farias.

4. The officers would later contend that they pulled Mr. Farias over for having an "obstructed windshield," based on a miniature Christmas tree air freshener fastened to his rearview mirror.

5. The ticket the officers issued pursuant to this alleged "infraction" was immediately dismissed in traffic court.

6. The individual Defendants in this case are now being sued for their respective roles in the violation of Mr. Farias's rights.

7. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens.


## JURISDICTION

8. Jurisdiction is founded upon the existence of a Federal Question.

9. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Section 1983 and arising under the law and statutes of the State of New York.

10. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to

the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

11. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Southern District.

## PARTIES

12. At all times relevant and hereinafter mentioned, Plaintiff BENJAMIN FARIAS was a resident of Bronx County in the City of New York.

13. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

14. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT, including all the police officers thereof.

15. Upon information and belief, at all times hereinafter mentioned, Defendant OFFICER TONY BASILIO, SERGEANT ROBERT KING, and OFFICER(S) JOHN DOE #1-10 were employed by the Defendant CITY OF NEW YORK, as member(s) of its police department, assigned to the 52nd Precinct.

16. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the POLICE CHIEF OF THE NEW YORK CITY POLICE DEPARTMENT is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

17. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

18. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

19. Mr. Farias's claim arose on April 20, 2015 at about 6:00PM near the intersection of Grand Concourse and 204th Street, Bronx, New York.

20. Mr. Farias, who was employed as an assistant baseball coach at a local high school, was driving a Mercedes owned by his girlfriend's mother.

21. Mr. Farias was obeying all traffic laws and minding his own business when he noticed a police car driving one lane over and in front of him.

4

22. As traffic proceeded, Mr. Farias noticed that the police car seemed to be deliberately waiting for his car to advance ahead of it.

23. Once Mr. Farias's vehicle pulled ahead, the police car pulled behind him.

24. Shortly thereafter, Mr. Farias signaled and changed lanes, at which point the police car turned on its lights and pulled Mr. Farias over.

25. Defendants Basilio and King then approached Mr. Farias's window and demanded to see his license and registration.

26. When Mr. Farias inquired as to why he had been stopped, the officers again told him to hand over his license and registration.

27. Mr. Farias proceeded to hand over the documents, along with a form provided to him by the Town of Bethlehem (NY) verifying that a previous suspension of his license had been lifted.

28. The officers then returned to their police car as Mr. Farias waited.

29. In light of the baseless stop and the officers' bullying demeanor, Mr. Farias decided to activate the video recorder on his phone, and set it in the cup holder between his front seats.

30. When the officers returned to his vehicle, they ordered Mr. Farias out of his vehicle, arrested him, and began to search his car, absent permission or authority.

31. When Mr. Farias demanded to know why he was being arrested, one of the officers replied dismissively, "Because we're police."

32. When Mr. Farias demanded to know the basis for the officers' search of his car, Defendant King referenced an empty plastic shopping bag blowing around under the driver's seat and stated that he thought it contained "the outline of a weapon."

33. Defendant Officer Basilio proceeded to place handcuffs on Mr. Farias so tightly that Mr. Farias could not help but wince when they were fastened, prompting Basilio to warn him, to "Stop resisting," as Sergeant King watched and did nothing.

34. Basilio then shoved Mr. Farias roughly in the back of a squad car in an awkward position, dramatically aggravating the pain of the cuffs.  Mr. Farias's doctor would later confirm that one of Mr. Farias's wrist had been fractured during this process.

35. As Mr. Farias watched through the windshield of the squad car, the officers continued their search of his vehicle (albeit, after turning Mr. Farias's camera phone over to block[2] the video portion of the recording).

36. Notably, toward the end of the search, in which officers found nothing but a single uneaten cookie, the following exchange between King and Basilio took place:

    Officer 1: "I don't even know why we pulled him over…

    Officer 2: "Just the [unintelligible/possibly "cocaine test" or "King test"]…"

    Officer 1: "That's what you put!  [Laughter.]  That's how you write the summons!"

37. Officers would later contend that they pulled Mr. Farias over for having an "obstructed windshield," based on a miniature Christmas tree air freshener fastened to his rearview mirror.

38. When officers returned to the squad car, Mr. Farias once again asked why he was being arrested, and officers grumbled "For driving with a suspended license."

39. When Mr. Farias emphasized that he had shown them documentary proof provided by the Town of Bethlehem that a previous suspension had been lifted, the officers ignored him.

---

[2] Officers ultimately decided to turn off the phone and remove it from the vehicle altogether.

40. Mr. Farias was then taken to the 52nd precinct and placed in a cell with a man who appeared to be on drugs and wreaked of body odor.  When the man attempted to engage Mr. Farias in conversation, Mr. Farias indicated that he didn't feel like talking and the man exploded with rage, yelling and cursing at Mr. Farias.

41. When Mr. Farias asked officers if he could be moved to a nearby empty cell for his safety, officers refused, saying the empty cell was for potential female detainees.

42. There were no female detainees at the precinct at any point while Mr. Farias was held there.

43. The officers then indicated that a licensed driver would have to come retrieve Mr. Farias's car.

44. Mr. Farias proceeded to contact a friend who lived nearby (who had a valid license), but when the friend arrived, officers inexplicably refused to release the car to him.

45. Finally Mr. Farias was forced to ask his girlfriend to come from Valhalla, NY to retrieve the car.

46. Once she arrived, Mr. Farias was let out of the cell and his personal belongings were returned.

47. As Mr. Farias sought to inventory and organize the belongings, an officer (John Doe #1) began asking him questions.

48. When Mr. Farias took a moment before answering as he continued to inventory the items, the officer became enraged and threw Mr. Farias back in the cell with the deranged man for another 15 minutes.

49. When Mr. Farias was finally let out of the cell and told he could leave at approximately 8:30PM, he remained silent and avoided any eye contact with officers for fear that they would throw him back in the cell again, or worse.

50. The absurd summons for the tiny Christmas tree air freshener, signed by Basilio, was thrown out at traffic court before Mr. Farias was asked to put on a case.

51. Although Mr. Farias was provided with a form from the Town of Bethlehem which indicated his license was valid, it was later revealed that an "assessment fee" which was never communicated to Mr. Farias (or apparently, the Town of Bethlehem), remained unpaid, and his license had, in fact, been suspended.

52. Upon learning this, Mr. Farias pled guilty to unknowingly driving with a suspended license (V.T.L. 509(1)), a violation, and immediately paid the fine.

53. As a result of the Defendants' despicable conduct, Mr. Farias suffered humiliation, ridicule, disgrace, and embarrassment; he likewise sustained substantial expense, and significant physical, emotional, and mental anguish.

54. Mr. Farias continues to suffer from the effects of his experience to this day.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANTS BASILIO AND KING

### Violation of Constitutional Rights Under Color of State Law
### —Unreasonable Stop and Search—

55. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 54.

56. The Fourth Amendment of the United States Constitution protects citizens from unreasonable stops, searches and seizures by government officials, and prohibits law

enforcement officers from arresting, or otherwise detaining individuals in the absence of appropriate authorization.

57. Defendants pulled Mr. Farias over, absent any legal basis, by their own recorded admission.

58. Officers had no legal basis for searching Mr. Farias's car.

59. Mr. Farias was handcuffed in the back of a squad car, posing no threat to officers, and in no way in reach of the passenger compartment, when officers wrongfully searched his vehicle.

60. Mr. Farias was arrested for driving with a suspended license, and no reasonable officer would have concluded that a search of his vehicle would yield further evidence relevant to that charge.

61. The Defendant officers made no effort to inventory the contents of the Plaintiff's vehicle, much less do so pursuant to any established inventory procedures, and never had any intention of doing so.

62. Defendants had no good faith basis to believe a plastic bag blowing around the back of Mr. Farias's vehicle contained a weapon, and Defendants' statement to that effect represents yet another malicious attempt to fabricate a post-hoc justification for their unwarranted, terrifying, and humiliating invasion of Mr. Farias's privacy.

63. Defendants' actions were motivated by bad faith and malice.

64. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

65. As a result of the Defendants' despicable conduct, Mr. Farias suffered humiliation, ridicule, disgrace, embarrassment, substantial expense, significant physical, emotional, and mental anguish, and was otherwise substantially injured.


## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANTS BASILIO AND KING

### Violation of Constitutional Rights Under Color of State Law
### -Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-

66.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 65.

67. Defendants created false evidence against Plaintiff Benjamin Farias, as herein described.

68. Defendants forwarded false evidence and false information to prosecutors in the Bronx County District Attorney's office.

69. Defendants misled the judge and the prosecutors by creating false evidence against Plaintiff Benjamin Farias.

70. In creating false evidence against Plaintiff Benjamin Farias, in forwarding false evidence and information to prosecutors, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

71. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

72. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Benjamin Farias has been substantially injured.

**AS AND FOR THE THIRD CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT BASILIO**

**Violation of Constitutional Rights Under Color of State Law**
**—Excessive Force—**

73. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 72.

74. Defendant Basilio used excessive force against the Plaintiff by roughly handcuffing him, deliberately making the cuffs tighter than was reasonable or necessary, and shoving Mr. Farias awkwardly and with unnecessary force into the back of a squad car while cuffed, as aforedescribed.

75. Defendant Basilio's actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Farias.

76. Defendant Basilio is liable for said damage and injuries pursuant to the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

77. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Benjamin Farias has been substantially injured.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANTS BASILIO AND KING**

**Violation of Constitutional Rights Under Color of State Law**
**-Conspiracy to Violate Plaintiff's Civil Rights-**

78. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 77.

79. Defendant officers, as state actors in their individual capacities pursuing personal interests wholly separate and apart from that of the City of New York or New York City

Police Department, conspired together, reached a mutual understanding, and overtly

acted in concert to undertake a course of conduct violative of the Plaintiff's constitutional

rights by:

    a.   Agreeing to deliberately and maliciously fabricate a basis for stopping the

          Plaintiff and searching his vehicle; and

    b.   Agreeing not to intervene with any of the police misconduct directed at Mr.

          Farias.

80. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

given that said actions were undertaken under color of state law.

81. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to

the rights of Ms. Farias.

82. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff

has been substantially injured.


**AS AND FOR THE FIFTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law
-Failure to Intercede-**

83. Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 82.

84. In stopping Plaintiff Benjamin Farias without justification, in searching his car without

justification, in utilizing excessive force against Mr. Farias, in deliberately or recklessly

approving the arresting officers' conduct, and in forwarding false evidence and

information to prosecutors, Defendants violated Plaintiff's constitutional rights, as aforedescribed.

85. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

86. At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable stops, searches, and force incidents were clearly established constitutional rights that a reasonable person would have known.

87. At all times relevant, Defendants had a reasonable opportunity to intervene, but elected not to do so; their actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Benjamin Farias.

88. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

89. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Benjamin Farias has been substantially injured.


**AS AND FOR THE SIXTH CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT CITY OF NEW YORK**

**Violation of Constitutional Rights Under Color of State Law**
**-Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees Under Color of State Law-**

90. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 89.

91.  Upon information and belief, Defendants City of New York, King, and Doe #1-10, who were supervisors and final decision makers, as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, allowed or encouraged employees to fabricate evidence against the Plaintiff, allowed or encouraged failures to disclose exculpatory evidence, allowed or encouraged the forwarding of false or otherwise unreliable evidence to prosecutors, and allowed or encouraged officers to testify falsely.

92.  In the alternative, and upon information and belief, Defendants City of New York, King, and Doe #1-10 instituted policies addressing the topics listed above, but through a culture of gross negligence, carelessness, malice, and/or the enforcement of illegal and immoral arrest quotas, demonstrated a deliberate and willful indifference to the constitutional rights of the Plaintiff.

93. Upon information and belief, from approximately 2008 to 2009, Officer Adrian Schoolcraft secretly recorded numerous roll calls at the precinct in which superiors urged officers to manipulate the "stats" the department was under pressure to produce: specifically, officers were told to arrest people who were doing little more than standing on the street.  After voicing his concerns, Schoolcraft was allegedly harassed and reassigned to a desk job.  After he left work early one day, a SWAT unit is alleged to have illegally entered his apartment, physically abducted him and forcibly admitted him to a psychiatric facility, where he was held against his will for several days.   In 2010, Schoolcraft released the audio recordings to *The Village Voice*, leading to the reporting of

14

a multi-part series titled *The NYPD Tapes.*  That same year Schoolcraft filed a lawsuit

against the NYPD and Jamaica Hospital.  In 2012 *The Village Voice* reported that a 2010

unpublished report of an internal NYPD investigation found the 81st precinct had

evidence of quotas.

94. Upon information and belief, in or about July of 2013, the Kings County District

Attorney's efforts substantially expanded, as the office announced the formation of an

unprecedented panel of former prosecutors, professors, and retired judges to review as

many as 50 convictions involving a former Kings County detective, Louis Scarcella, who

is alleged to have regularly sought false statements from witnesses, and whose work

appears to have sent an array of innocent citizens to prison.

95.  Upon information and belief, another former Kings County Detective, Michael Race,

whose work has also been linked to the conviction of innocents, has been quoted in press

accounts as stating that of the 750 murder investigations he ran, only one was "done the

correct way, A to Z."

96. Long time Kings County District Attorney Charles Hynes was recently voted out of

office amidst widespread[3] allegations of misconduct, and he may ultimately be indicted.[4]

97.  In August of 2013, federal Judge Shira A. Sheindlin of the Southern District of New

York found the New York City Police Department resorted to a "policy of indirect racial

---

[3] See e.g., <u>Charles Hynes, Scandal-Plagued District Attorney, Faces Verdict at the Polls</u>, ProPublica, September 6, 2013, available at http://www.huffingtonpost.com/2013/09/06/charles-hynes-brooklyn-district-attorney-election_n_3881395.html; <u>Brooklyn DA Charles Hynes in the Hot Seat for Protecting Prosecutor Who Imprisoned Innocent Man</u>, New York Daily News, November 16, 2012, available at http://www.nydailynews.com/new-york/b-klyn-da-charles-hynes-hot-seat-wrongful-conviction-article-1.1203342; <u>Ex-Brooklyn Prosecutor Charles J. Hynes Accused of Misues of Funds</u>, New York Times, available at http://www.nytimes.com/2014/06/03/nyregion/charles-hynes-brooklyn-district-attorney-inquiry.html.
[4] <u>Indictments Looming in Probe of ex-Brooklyn D.A. Charles Hynes</u>, New York Post, May 28, 2016, available at http://nypost.com/2016/05/28/indictments-looming-in-probe-of-ex-brooklyn-da-charles-hynes/.

profiling" as officers routinely stopped "blacks and Hispanics who would not have been

stopped if they were white." The Plaintiff in this case is Hispanic.

98.  It is also true that following the landmark <u>Floyd v. City of New York</u>, 959 F.Supp. 2d

540 (S.D.N.Y. 2013), Judge Scheindlin appointed a monitor to oversee the N.Y.P.D.'s

compliance with Court Ordered remedies.  (<u>Id</u>. at 543.)  While the "stop and frisk" in

<u>Floyd</u> is not specifically at issue in the present case (though one could argue Mr. Farias's

ordeal was the automotive version of "stop and frisk"), the related issue of inadequate

monitoring and supervision of officers certainly is—and it is notable that the N.Y.P.D.

monitor's most recent (2/16/2016) report emphasized that departmental reforms "need[]

to be communicated and reinforced better, not just at the top, but throughout the

Department….Ultimately, this is a challenge of leadership, particularly for those who

supervise officers engaged in day-to-day enforcement activities—sergeants, their

immediate supervisors, and the precinct and unit commanders who set the tone for those

under them.  This challenge implicates every aspect of the court orders and the parties'

agreements, and it will not be met without changes in policies, training, supervision, and

all the ways the NYPD incentivizes good police behavior and discourages unacceptable

behavior.  This is a large task that will take time and substantial effort to accomplish."

99. In 2011, some two-dozen Bronx-based NYPD officers were subject to criminal charges[5]

involving allegations of "fixing" tickets for friends and relatives.

100.  Upon information and belief, in July of 2012, after discovering that many people

arrested on charges of criminal trespass at Bronx County housing projects were innocent,

---

[5] See <u>Big Inquiry Into Ticket-Fixing in New York</u>, New York Times, April 17, 2011, available at
http://www.nytimes.com/2011/04/18/nyregion/ticket-fixing-by-police-investigated-in-new-
york.html?_r=0&adxnnl=1&adxnnlx=1400166713-OIwMCI6A6jnLyJC00DdeoQ

even though police officers had provided written statements to the contrary, the Bronx district attorney's office quietly adopted a policy[6] of no longer prosecuting people who were stopped at public housing projects and arrested for trespassing, unless the arresting officer was interviewed to ensure that the arrest was warranted.

101. The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, as such a legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

102.  Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers in Bronx County and the 52nd Precinct.

103.  The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

104.  This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

105. Upon information and belief, none of the Defendants named herein have been disciplined in any way for their actions relative to the Plaintiff; nor has the Internal Affairs Bureau undertaken an investigation of the events complained of herein.

---

[6] Prosecutor Deals Blow to Stop and Frisk Tactic, New York Times, September 25, 2012, available at
http://www.nytimes.com/2012/09/26/nyregion/in-the-bronx-resistance-to-prosecuting-stop-and-frisk-
arrests.html?pagewanted=all

106.  As a direct and proximate result of the unconstitutional acts described above, the

   Plaintiff has been substantially injured.


## STATE CLAIMS

107.  Notice of the Plaintiff's claim, the nature of the claim and the date of, the time when,

   the place where and the manner in which the claim arose was timely served upon the

   Comptroller of the City of New York and assigned Claim #2015PI016138.

108.  Plaintiff was produced for a hearing pursuant to Section 50h of the General Municipal

   Law on March 22, 2016.

109.  More than 30 days have elapsed since the Notice of Claim was served upon the

   Defendant City of New York and said Defendant has neglected to initiate any settlements

   thereof.

110. This action is being commenced within One Year and Ninety-Days of the date the cause

   of action arose.


## AS AND FOR THE SEVENTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT BASILIO

### —Assault & Battery—

111.  Plaintiff incorporates by reference and realleges each and every allegation stated in

   Paragraphs 1 through 110.

112.  As set forth above, Defendant Basilio committed assault and battery on Plaintiff by

   causing Plaintiff to be in apprehension of imminent, harmful and offensive contact, and

in fact, making harmful and offensive contact with the Plaintiff; in so doing, Basilio

violated Plaintiff's rights under New York law, without just cause or legal right, willfully

and maliciously attacking the Plaintiff with unnecessary force.

113.  The actions of the officers were intentional, unlawful, and unwarranted, and in violation

of Penal Law Section 35.30 of the State of New York and of Article 140 of the Criminal

Procedure Law of the State of New York.

114.  As a direct and proximate result of the Defendant's conduct as described above, the

Plaintiff has been substantially injured.


## AS AND FOR THE EIGHTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### -Negligent Infliction of Emotional Distress-

115.  Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 114.

116.  As a direct and proximate result of the Defendants' outrageous departure from accepted

standards of care, Plaintiff was caused to suffer severe emotional distress.


## AS AND FOR THE NINTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST ALL DEFENDANTS

### -Intentional Infliction of Emotional Distress-

117.  Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 116.

118.  At all times mentioned herein, Defendants' conduct was intentional, extreme and

outrageous.

119.  As a direct and proximate result of the unconstitutional acts described, the Plaintiff has

suffered severe emotional distress.

### AS AND FOR THE TENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST ALL DEFENDANTS

#### -Negligent Hiring, Retention, and Supervision-

120.  Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 119.

121.  At all times relevant, Defendants King, and Officer(s) Doe were negligent, careless,

and reckless in hiring, retaining, supervising, and promoting as and for their employees,

in that said officers, as employees of the City of New York, were not qualified to be hired

or retained or promoted as police officers, lacked the experience, deportment, skill,

training, and ability to be employed by the Defendant City of New York; to be retained as

employees of the City of New York; and to be utilized in the manner in which each was

employed on the day in question.

122.  At all times relevant, Defendants King and Officer(s) Doe failed to exercise due care

and caution in hiring, retaining, and/or promoting practices; Defendants failed to

adequately investigate police officers' backgrounds; adequately screen and test the

Defendant police officers; failed to adequately monitor or supervise the Defendant police

officers; failed to properly discipline officers who violate Patrol Guidelines; failed to

properly train and retrain the Defendant police officers; and the Defendant City of New

York, its' agents, servants, and/or employees, were otherwise careless, negligent, and reckless.

123.   The aforesaid occurrence, to wit: wrongfully stopping, searching and assaulting the Plaintiff absent justification; failing to intervene when the Plaintiff's rights were plainly being violated, and engaging in conspiracy to carry out unconstitutional actions resulting in injuries to the Plaintiff, were caused wholly and solely by reason of the negligence or deliberate indifference of the Defendants without any negligence on the part of the Plaintiff contributing thereto.

124.   That by reason of the aforesaid, Plaintiff has been substantially damaged.

## DEMAND FOR PUNITIVE DAMAGES

125. The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person.  Consequently, an award of punitive damages is appropriate to punish the Defendants.  The Plaintiff does not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

126.   The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Benjamin Farias requests that this Honorable Court grant him the following relief:

A.   A judgment against Defendants Basilio, King, and Doe(s) for compensatory damages, and punitive damages in an amount to be determined by a properly charged jury;

B.  A judgment in favor of Plaintiff against Defendant City of New York for compensatory

damages in an amount to be determined by a properly charged jury;

C.  A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. §

1988;

D.  Any other relief this Court finds to be just, proper, and equitable.


Dated:  New York, New York                    Respectfully Submitted By:
        June 22, 2016
                                              The Law Office of Andrew L. Hoffman, P.C.
                                              By:


                                              _____/s/_____
                                              Andrew L. Hoffman, Esq.
                                              SDNY Bar Code Number: AH2961
                                              261 Madison Avenue, 12 Floor
                                              New York, New York 10016
                                              T:      (212) 736-3935
                                              E: ahoffman@andrewhoffmanlaw.com

22